**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

**RL HUDSON COMPANY,**

**Plaintiff,**

**v.**

**FEDERAL INSURANCE COMPANY;**
**TEDFORD & ASSOCIATES, LLC,**

**Defendants.**

**Case No. 25-CV-00326-SEH-MTS**

## OPINION AND ORDER

Before the Court are Plaintiff RL Hudson Company's ("Hudson") motion to remand [ECF No. 16] and Defendant Tedford & Associates, LLC's ("Tedford") motion to dismiss [ECF No. 12]. For the reasons stated below, Hudson's motion to remand is denied, and Tedford's motion to dismiss is moot.

## I. Background

Hudson is an Oklahoma corporation based in Broken Arrow, Oklahoma.[1] [ECF No. 1-2 at 1]. In 2019, Hudson engaged Tedford to purchase insurance to cover certain "business risks." [*Id.* at 2]. Through Tedford, Hudson procured such a policy with Defendant Federal Insurance Company

---

[1] The facts alleged in Plaintiff's state court petition [ECF No. 1-2] are accepted as true for purposes of this Opinion and Order. *See Flowers v. EZPawn Oklahoma, Inc.*, 307 F. Supp. 2d 1191, 1206 (N.D. Okla. Feb. 3, 2004) (recognizing that the Court must "take the allegations as true for purposes of the motion to remand").

("Federal"). [*Id.*] Among other things, the policy included coverage for "cyber liability," which Hudson alleges was "intended to ensure security and peace of mind for business enterprises from risks of data loss, business extortion, business interruption, network security liability, cybercrimes, and ransomware attacks." [*Id.*]

In June 2020, Hudson was the victim of a ransomware attack. [ECF No. 1-2 at 2; ECF No. 18 at 20; ECF No. 18-2]. Hudson reported the incident to Defendants on the same day. [ECF No. 1-2 at 2]. It paid the ransom, which was allegedly in compliance with Federal's procedures. [*Id.* at 2–3]. Hudson sustained $334,388.13 in damages and filed an insurance claim with Federal. [*Id.* at 3]. Federal investigated Hudson's claim and, in August 2020, "determined that reimbursement of [Hudson's] ransomware payment might violate the U.S. Department of Treasury's Office of Foreign Asset Control ("OFAC") sanctions." [ECF No. 18-3 at 2]. Federal advised Hudson that "in order to comply with OFAC requirements," it could only reimburse Hudson "upon issuance of express permission from OFAC[.]" [*Id.* at 3]. As of June 2025, Federal allegedly had neither paid nor formally denied Hudson's insurance claim. [ECF No. 1-2 at 3].

Hudson sued Federal in the Tulsa County District Court, alleging that Federal had breached both its contract with Hudson and its duty of good faith and fair dealing. [ECF No. 1-2 at 3–5]. Hudson also sued Tedford for

negligence and constructive fraud. [*Id.* at 5–7]. Federal removed the action to this Court, arguing that Hudson fraudulently joined Tedford to avoid diversity jurisdiction. [ECF No. 1]. Tedford is a citizen of Oklahoma. [ECF No. 15]. Hudson moves to remand the action back to state court. [ECF No. 16].

## II. Discussion

### *A. Fraudulent Joinder Principles*

"Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction." *Dutcher v. Matheson*, 733 F.3d 980, 984 (10th Cir. 2013) (citation omitted). The federal removal statute permits a defendant to remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a). This includes when the district court has diversity jurisdiction, which requires the amount in controversy to exceed $75,000[2] and the parties to be citizens of different states. 28 U.S.C. § 1332(a)(1). "Complete diversity is lacking when any of the plaintiffs has the same [citizenship] as even a single defendant." *Dutcher*, 733 F.3d at 987.

Although a court typically "evaluates the propriety of a removal by determining whether the allegations on the face of the complaint satisfy the

[2] Both parties agree that the amount-in-controversy requirement is satisfied here. [*See* ECF No. 1-2 at 7; ECF No. 1 at 8].

jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive." *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006).[3] To show that a defendant has been fraudulently joined, the removing party "must demonstrate either: (1) actual fraud in the pleading of the jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher*, 733 F.3d at 988 (citation omitted); *see Mayes Cnty. FOP Lodge #116, Inc. v. Farmers Ins. Exch.*, No. 19-CV-687, 2020 WL 6136236, at *3 (N.D. Okla. Oct. 19, 2020) ("[T]he party asserting federal jurisdiction must show that the plaintiff would have no possibility of recovery against the defendant."). When either occurs, the district court disregards the fraudulently joined party "for purposes of assessing complete diversity." *Dutcher*, 733 F.3d at 988.

"The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Dutcher*, 733 F.3d at 988 (citation omitted); *see also Montano v. Allstate Indem.*, 211 F.3d 1278 (Table), 2000 WL 525592, at *2 (10th Cir. Apr. 14, 2000) (citation omitted) ("This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6)[.]"). In deciding, the court may "pierce the pleadings, consider the entire record, and determine

---

[3] Unpublished decisions are not precedential, but they may be cited for their persuasive value. *See* Fed. R. App. 32.1.

the basis of joinder by any means available." *Nerad*, 203 F. App'x at 913 (quoting *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)).

***B. Federal has demonstrated Hudson is unable to establish a cause of action against Tedford in state court.***

Federal argues that Hudson is unable to establish a viable claim against Tedford in Oklahoma court for various reasons: first, because Oklahoma courts do not recognize negligent procurement claims against an insurance agent based on requests for "appropriate" or "proper" coverage [ECF No. 1 at 3–4]; second, because Tedford cannot be liable for negligence or constructive fraud when Hudson's insurance claim was covered under the policy [*id.* at 4–6]; third, because, as an insurance agent, Tedford had no duty to assist Hudson in getting Federal to pay its insurance claim [*id.* at 5]; fourth, Hudson's claims against Tedford are time-barred [*id.* at 5–6 (citing Okla. Stat. tit. 12 § 95(A)(3))]; fifth, because Hudson's fraud claim fails to comply with Federal Rule of Civil Procedure 9(b) [*id.* at 6]; and sixth, because Tedford's purported duty to "fully disclose what benefits the Policy offered and what types of claims would be covered" cannot support a fraud claim [*id.*].

*i. Negligence (Count Three)*

Federal's second argument is most persuasive. Both negligence (including negligent procurement) and constructive fraud claims require not only a duty,

but also a breach of that duty. *See Rivera v. Hartford Ins. Co. of the Midwest*, 14-CV-1082, 2014 WL 7335320, at *2 (W.D. Okla. Dec. 19, 2014) ("The lack of factual allegations demonstrating a specific breach of duty renders plaintiffs' negligent procurement claim insufficient."); 15 O.S. § 59 (defining constructive fraud as "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, … by misleading another to his prejudice").

Hudson alleges that "Tedford owed a duty to recommend an insurance policy that would cover the risks that Hudson sought to cover." [ECF No. 1-2 at 6]. Accepting that such a duty exists under Oklahoma law, Hudson's own pleadings demonstrate that Tedford satisfied, rather than breached, that duty. Elsewhere in its complaint,[4] Hudson asserts that Federal "admitted that the loss and Hudson's subsequent payments satisfied the Policy's proof of loss requirement and that Hudson's claim was a covered claim." [*Id.* at 3]. Hudson further states that "Federal has recognized Hudson's claim as a covered loss." [*Id.*].

In Oklahoma, "[a]n agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance …."

---

[4] Although Hudson filed a petition in state court, in the interest of clarity and consistency with the Federal Rules of Civil Procedure, the Court will refer to Hudson's petition as the "complaint."

*Swickey v. Silvey Companies*, 979 P.2d 266, 269 (Okla. Civ. App. 1999). Tedford discharged that duty by procuring for Hudson an insurance policy that purported to, and did, cover losses due to ransomware attacks. Federal has not withheld payment from Hudson because Tedford procured the wrong type of coverage. *See Lewis v. State Farm Fire & Cas. Co.*, 25-CV-0274, 2026 WL 179888, at *4 (N.D. Okla. Jan. 22, 2026) ("This is not a situation where plaintiff's insurance claim was denied because the type of policy, type of coverage, or coverage limit was different than what was requested." (citation and brackets omitted)). Rather, the dispute centers on whether Federal breached its contract and acted in bad faith by withholding payment on a *covered claim*. An agent is not liable for negligent procurement under these circumstances. *See, e.g.*, *Smith v. Allstate Vehicle & Prop. Ins. Co.*, 14-CV-0018, 2014 WL 1382488, at *2 (W.D. Okla. Apr. 8, 2014) (citing *Swickey*, 979 P.2d at 268) (no negligent procurement claim where plaintiffs "do not assert that the amount of insurance selected was different from what they discussed with [the agent] or that they had asked for a different type of policy").

The Court is similarly suspect of any suggestion that Tedford breached a duty by failing to explain to Hudson the so-called "Compliance with Trade Sanctions" provision. [*See* ECF No. 16-3]. Oklahoma law imposes on insureds (and indeed any party to a contract) the responsibility to read and understand the terms of the policy to which they agree. *See Liverpool & L. &*

*G. Ins. Co. v. T.M. Richardson Lumber Co.*, 69 P. 936, 937 (Okla. 1902) (an insured has a duty "to examine, read, and know the contents of the policy before accepting and paying the premium therefor, and, having failed or neglected to do so, … is estopped from denying knowledge of its terms and conditions").[5] This is especially the case when the party to the contract is a business entity. *See Country Gold, Inc. v. State Auto Prop. & Cas. Ins. Co.*, 14-CV-1398, 2015 WL 431638, at *4 (W.D. Okla. Feb. 2, 2015). Oklahoma law charged Hudson with reading and understanding a reasonable policy exclusion to its coverage, and Tedford undertook no duty to explain the terms of coverage. *See Smith*, 2014 WL 1382488, at *3 (rejecting plaintiffs' attempt to impose on insurance agents a duty to explain to insureds the terms of coverage).

Finally, Hudson alleges that Tedford breached a duty by "fail[ing] to meaningfully assist Hudson in its attempts to have its claim paid …." [ECF No. 1-2 at 6; *see also* ECF No. 16 at 9 ("Tedford … had a duty to assist its customer, Hudson, in dealing with Federal when Federal proved obstinate.")].

---

[5] *But see Warner v. Cont'l Cas. Co.*, 534 P.2d 695, 699 (Okla. Civ. App. 1975) (reforming insurance contract even where the plaintiff failed to read it because the contract did not conform to plaintiff's verbal agreement with the insurance agent). That is not the situation here because Hudson does not allege that Tedford represented the policy as covering ransomware attacks without exclusion. *See Smith*, 2014 WL 1382488, at *3 ("Although an agent may be held accountable for failing to answer an insured's coverage questions accurately, he or she generally is not obligated to explain the policy terms to the insured.").

The Court is unaware of, and Hudson has not pointed to, any Oklahoma authority requiring an insurance agent to interface between an insurer and an insured during the claims process. *See Sewell v. Great N. Ins. Co.*, 535 F.3d 1166, 1172 (10th Cir. 2008) ("Insurance agents or brokers are not personal financial counselors and risk managers, approaching guarantor status, and it is well settled that agents have no continuing duty to advise, guide, or direct a client to obtain additional coverage."). In fact, Hudson describes Tedford's role as an insurance agent as "solicit[ing] business and sell[ing] Federal insurance policies in the state of Oklahoma." [ECF No. 1-2 at 2]. Tedford's duty was "to act in good faith and use reasonable care, skill and diligence in the procurement of insurance." *Swickey*, 979 P.2d at 269. By selling Hudson an insurance policy, Tedford did not undertake a duty to ensure claims filed under that policy were timely paid.

*ii. Constructive Fraud (Count 4)*

Constructive fraud claims also require a breach of duty. *See* Okla. Stat. tit. 15 § 59. Hudson alleges that "Tedford had a duty to fully disclose what benefits the Policy offered and what types of claims would be covered." [ECF No. 1-2 at 6]. For reasons already discussed, Tedford had no duty to explain to Hudson every coverage term and benefit in its policy. *See Smith*, 2014 WL 1382488, at *3. Even assuming Tedford owed a duty to fully disclose the types of insurance claims that would be covered, a breach of that duty could

not have damaged Hudson. Federal admitted the policy covered Hudson's insurance claims and withheld payment for other reasons. [*See* ECF No. 1-2 at 4 ("Federal has recognized Hudson's claim as a covered loss."). Hudson also alleges that "Tedford represented to Hudson that the Policy would offer coverage for claims of the type that Hudson suffered …." [ECF No. 1-2 at 6]. Hudson's own pleadings demonstrate that any purportedly false representations were arguably true. [*See id.* at 3–4 ("Federal subsequently admitted that … Hudson's claim was a covered claim.")].

A true statement can form the basis for a constructive fraud claim only where it "convey[s] a false impression by the disclosure of some facts and the concealment of others …." *See Myklatun v. Flotek Indus., Inc.*, 734 F.3d 1230, 1234–35 (10th Cir. 2013). Here, Tedford arguably could have disclosed the trade-sanctions exclusion, but the Court has already found that it had no duty to do so. *See Smith*, 2014 WL 1382488, at *4 (quoting *Silver v. Slusher*, 770 P.2d 878, 882 n.11 (Okla. 1988)) ("Although constructive fraud need not involve intent to deceive and may be based on a negligent or innocent misrepresentation, it requires a breach of some legal or equitable duty.").

In summary, viewing the facts and law in the light most favorable to Hudson, the Court finds it would have no possibility of recovery under Oklahoma law on its negligence and constructive fraud claims against

Tedford.[6] Despite its heavy burden, Federal has demonstrated that Hudson is unable to establish a cause of action against Tedford in state court. *See Dutcher*, 733 F.3d at 988. Thus, the Court will disregard Tedford for purposes of determining jurisdiction. Without Tedford, the Court finds complete diversity between Hudson and Federal, the sole remaining defendant. Jurisdiction over Hudson's claims against Federal is therefore proper under 28 U.S.C. § 1332, and Hudson's motion to remand [ECF No. 16] is denied.

The Court recognizes that its opinion on the motion to remand dictates the dismissal of Hudson's claims against Tedford. *See Lewis v. State Farm Fire & Cas. Co.*, No. 25-cv-0274, 2026 WL 179888, at *5 (N.D. Okla. Jan. 22, 2026) (dismissing claims based on fraudulent joinder). Therefore, Tedford's motion to dismiss [ECF No. 12] is moot, and Hudson's claims against Tedford are dismissed.[7]

---

[6] Because Hudson has failed to allege a breach of duty that is necessary for negligence and constructive fraud claims, the Court need not consider Federal's other arguments.

[7] Although Hudson requests leave to amend in its motion to remand [ECF No. 16 at 12 n.4] and its response to Tedford's motion to dismiss [ECF No. 17 at 7 n.3], "a court need not grant leave to amend when a party fails to file a formal motion." *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) (quotation omitted). And the Tenth Circuit has "repeatedly held that 'a bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based.'" *Id.* (quoting *Albers v. Bd. of Ctny. Comm'rs*, 771 F.3d 697, 706 (10th Cir. 2014)). In any event, because the Court finds Hudson unable to establish a cause of action against Tedford, it also finds that amendment would be futile.

### III. Conclusion

For the reasons stated above, Plaintiff RL Hudson Company's Motion to Remand [ECF No. 16] is DENIED. Defendant Tedford & Associates, LLC is dismissed based on fraudulent joinder and terminated as a party to this case. The remaining parties are instructed to amend the case caption accordingly. Defendant Tedford & Associates, LLC's Motion to Dismiss [ECF No. 12] is MOOT. This case will proceed on Hudson's claims against Federal.

DATED this 26th day of October, 2026.

Sara Hill

Sara E. Hill
UNITED STATES DISTRICT JUDGE